UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DARRELL HORTON, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:08-CR-30 |
| ) | No. 2:10-CV-161 |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

### MEMORANDUM OPINION

This matter is before the Court on petitioner Darrell Horton's ("petitioner" or "Horton") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 156]. Horton generally contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Horton filed no memorandum in support of his motion and the United States has not been directed to respond to the motion.

Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts (the "Governing Rules") requires a judge to *sua sponte* dismiss a § 2255 petition without ordering a responsive pleading "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief[.]" Because it plainly appears from Horton's § 2255 motion and the record of prior proceedings that he is not entitled to relief, the United States has not been required to file a response and the motion will be DENIED for the reasons set forth herein.

### I. Procedural Background

Horton was charged, along with four co-defendants, in a ten count indictment returned by the federal grand jury on April 8, 2008, [Doc. 3]. In Count 1 of the indictment Horton was charged,

along with Dennis Bolden, Randall Hester, Alfred Crum and Tim Campbell, with conspiracy to possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; in Count 2, along with the same co-defendants, of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine HCL in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; in Count 6 with distribution of 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and in Count 7 with distribution of cocaine HCL in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). In Counts 1 and 2, the indictment names Nathaniel Allen as "a co-conspirator but not charged in this indictment" and Counts 6 and 7 of the indictment allege that the distribution offenses were committed by Horton and Nathaniel Allen, "aided and abetted by each other."

On September 8, 2008, Horton entered into a plea agreement with the United States, [Doc. 52], in which he agreed to plead guilty to Count 1 of the indictment. The plea agreement contained the following stipulation of facts:

> a) Through the testimony of several witnesses, to include co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that from approximately the month of May 2002, and continuing to on or about July 7, 2005, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute at least 1.5 kilograms but less than 4.5 kilograms of a mixture and substance containing a detectible amount of cocaine base, a Schedule II controlled substance.
>
> b) In furtherance of the conspiracy, defendant Horton assisted unindicted co-conspirator Nathaniel Allen in the distribution of cocaine base and cocaine powder to other members of the conspiracy. Defendant Horton also participated in the distribution of cocaine and cocaine base to various customers in

2

the Eastern District of Tennessee.

c) On July 7, 2005, a confidential informant, working at the direction of law enforcement agents, met with defendant Horton and unindicted co-conspirators Nathaniel Allen in Bean Station, Tennessee. In a recorded transaction, the informant purchased 66.4 grams of cocaine base and 3.4 grams of cocaine powder from Horton and Allen. During the transaction, the informant and Allen discussed the purchase of additional cocaine base and cocaine powder.

d) On July 13, 2005, defendant Horton was interviewed by law enforcement agents in Hamblen County, Tennessee. Horton admitted that he assisted Allen in the sale of cocaine base and cocaine powder to the confidential informant on July 7, 2005. Horton admitted that he traveled with Allen to pick up or deliver amounts of cocaine base to customers of Allen.

e) On July 20, 2005, defendant Horton was interviewed by law enforcement agents again in Hamblen County, Tennessee. During this interview, Horton admitted that he assisted unindicted co-conspirator Nathaniel Allen in obtaining cocaine base from Allen's supplier. After obtaining the cocaine base, Allen concealed it in a bag which he placed next to Horton's feet. Horton stated that he and Allen devised a system so that if they were stopped by the police, Horton would take the bag of cocaine and run so Allen would not get caught.

f) The United States and the defendant agree that the amount of cocaine base that the United States could hold the defendant responsible for prior to his cooperation was the distribution of 1.5 to 4.5 kilograms of cocaine base. Horton assisted and facilitated Allen in delivering a kilogram and a half to two kilograms of cocaine base from approximately May 2002 through July 2005 to an unindicted co-conspirator. Horton also assisted and facilitated Allen in delivering at least a kilogram of cocaine base from approximately May 2002 through July 2005 to a co-conspirator. Horton further assisted and facilitated Allen in delivering at least one kilogram of cocaine base from approximately May 2002 through July 2005 to another co-conspirator.

g) Horton also advised that he was present and observed co-conspirator Randall Hester pick up quarter ounce quantities of cocaine base from Allen for resale approximately every other day from June to July of 2005.

3

[Doc. 52 at ¶ 4]. Horton entered his guilty plea on September 29, 2008 and a sentencing hearing was scheduled after the preparation of a presentence investigation report ("PSR").

The following additional facts were set out in the PSR:

> 24. This investigation was initiated by Federal Bureau of Investigation Special Agent Kevin Keithley, the Tennessee Third Judicial Drug Task Force, the Tennessee Bureau of Investigation, and the Morristown, Tennessee Police Department. On July 7, 2005, the defendant participated in one buy of 66 grams of crack cocaine and 3.4 grams of powder cocaine to an informant. This occurred with unindicted co-conspirator, Thomas Nathaniel Allen. Allen was the primary target of this buy, however, defendant Horton was present and participated in the buy. The defendant assisted by handling the money and handing the drugs over to the informant. Charges against Thomas Nathaniel Allen were dismissed (2:05-CR-102) on January 22, 2008, due to Allen serving a life sentence in the Tennessee Department of Correction for murder.
>
> 25. Defendant Horton provided a statement to law enforcement regarding his role in selling drugs for Thomas Nathaniel Allen. He stated that Allen was supplied by Mario Bautista. The defendant admitted to witnessing Allen purchase from Bautista 10 ounces of cocaine on approximately 10 occasions and 2 kilogram bricks on approximately 30 occasions from May 2002 to December 2003. Further, defendant Horton admitted to delivering one ounce of crack cocaine on two occasions, one-half ounce of crack cocaine on 10 occasions, and one-quarter ounce of crack cocaine on 20 occasions to co-defendant Dennis Bolden in 2004. Co-defendants Dennis Bolden, Randall Hester, Alfred Crum, and Timothy Campbell all sold and/or delivered cocaine for Thomas Nathaniel Allen. The defendant is being held responsible for the distribution of 1.5 to 4.5 kilograms of cocaine base.

[PSR at ¶¶ 24, 25].

The PSR was disclosed to the parties on January 30, 2009. Based on a total offense level of 33 and a criminal history category of VI, the probation officer determined the applicable advisory guidelines range to be a term of imprisonment of 235 to 293 months. Neither the petitioner nor the government objected to the PSR. A government motion for downward departure pursuant to USSG

§ 5K1.1 was filed and the government recommended a two level reduction in the offense level to a total offense level of 31 which, with a criminal history category of VI, resulted in an advisory range of 188 to 235 months. At the sentencing hearing on May 11, 2009, the government's motion was granted, the Court departed downward as recommended by the government, and a sentence of 194 months of imprisonment was imposed. Judgment was entered on May 18, 2009, [Doc. 135]. Petitioner's notice of appeal was filed on May 20, 2009, [Doc. 136], and the Court's judgment was affirmed by the Sixth Circuit on June 2, 2010, [Doc. 150]. Horton then filed the instant motion under § 2255 on August 5, 2010.

On April 9, 2012, Horton, represented by Federal Defender Services of Eastern Tennessee, Inc., filed a motion pursuant to 18 U.S.C. § 3582(c) seeking reduction of his sentence pursuant to the retroactive crack amendment, [Doc. 183]. The Court granted the motion for reduction of sentence on May 9, 2013, [Doc. 199], and reduced Horton's sentence to 155 months of imprisonment.

## II. Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b). Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.

5

*Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

### III.  Analysis and Discussion

Horton initially filed a handwritten "2255 Application" on July 15, 2010, [Doc. 154]. In the handwritten petition, Horton made two claims of ineffective assistance of counsel: (1) that counsel misinformed him in regards to his potential sentence, informing him that he was facing a six year sentence; and (2) that counsel failed to object "to an unsubstantiated charge that defendant was never arrested, indicted or convicted for. Specifically, Assault on an Officer with a Firearm." Upon receipt of the handwritten motion by the Clerk, Horton was notified by the Clerk to refile his motion

6

using the appropriate standardized form. He did so on August 5, 2010. In that motion, Horton asserts a general claim of ineffective assistance of counsel in that (1) counsel failed to comply with the Court's order to review the PSR with defendant before sentencing; (2) that counsel failed to object to the use of a conviction to enhance his sentence for which he was never arrested, indicted or convicted; (3) that counsel failed to object to a facially defective indictment that was never presented to a federal grand jury; and (4) that counsel failed to file a pretrial motion to quash the indictment for conspiracy "where no other Conspirator existed." As a second general ground, petitioner also sought resentencing under the retroactive crack cocaine amendment, relief he has already been granted by the Court's order granting his motion pursuant to 18 U.S.C. § 3582(c).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

7

attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

When considering the second prong in relation to a guilty plea, the movant must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("a defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial"), *cert. denied*, 516 U.S. 1058 (1996). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

As an initial matter, Horton's motion lacks merit because he has failed to provide any factual support for his claims that he was denied ineffective assistance of counsel. He states his claims only in conclusory fashion. Rule 2 of the Governing Rules requires that the motion, among other things, "specify all grounds for relief available to the moving party" and "state the facts supporting each

8

ground." Rule 4 requires the Court to *sua sponte* dismiss a § 2255 motion without ordering a responsive pleading "[i]f it appears plainly from the motion, any attached exhibits and the record of prior proceedings that petitioner is not entitled to relief." A petition which fails to state the supporting facts is legally insufficient on its face and federal courts are thus authorized to summarily dismiss such a petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Marchibroda v. United States*, 368 U.S. 487, (1962); *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). When a petitioner files a § 2255 motion, he must set forth facts entitling him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (collecting cases).

Despite having been pending for more than three years, Horton's petition lacks the necessary factual support for any of his claims for relief and is insufficient to support a claim for relief under § 2255. *See Siers v. Ryan*, 733 F.2d 37, 45 (3d Cir. 1985) *cert. denied*, 490 U.S. 1025 (1989) (dismissal warranted when "it appears on the face of the petition that petitioner is not entitled to relief."). *See also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the court); *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (finding that a § 2255 petition cannot stand on vague and conclusory assertions of a constitutional violation; rather, the petition must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (holding that vague or conclusory allegations warrant summary dismissal of § 2255 claims); *United States v. Aiello*, 814 F.2d 109, 113-114 (2d Cir. 1987) (holding that a § 2255 petition must be based on more

than "[a]iry generalities, conclusory assertions and hearsay statements."); *United States v. Unger*, 635 F.2d 688, 691 (8th Cir. 1980) (holding that "[c]onclusory assertions that a defendant's pleas were involuntary and coerced are insufficient.").

Nevertheless, the Court will attempt to address Horton's claims on the merits, to the extent they can be discerned from the sketchy pleadings filed by Horton. Even considering the claims on the merits, however, they plainly lack merit and are insufficient to entitle Horton to relief.

### A. Misinformation About Potential Sentence

As noted above, Horton alleges that counsel misinformed him in regards to the sentence he was facing, stating that he was facing a six year sentence. Although Horton provides no details concerning the alleged representation by counsel, this claim is flatly and clearly contradicted by the record. First of all, the plea agreement signed by Horton, [Doc. 52], clearly states that "the maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a term of imprisonment of a minimum mandatory ten years and not more than life, . . ." [*Id*. at ¶ 1]. Furthermore, Horton acknowledged in the plea agreement that "[t]he Court may impose any lawful term of imprisonment *up to the statutory maximum*." [*Id*. at ¶ 2(a)] (emphasis added). Horton acknowledged that "[a]ny estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court," and that he understood "that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation office and any information presented by the parties." [*Id.* at ¶ 11].

In addition, Horton testified at the change of plea hearing, under oath, that he had read the plea agreement, that his attorney had explained all the terms and conditions of the plea agreement,
10

and that he fully understood all the terms and conditions of the plea agreement. [Doc. 140 at 5]. Horton clearly acknowledged that, except for the promises made in the plea agreement, no promises or threats of any kind had been made by anyone to induce him to plead guilty in the case. [*Id*. at 8]. Horton was clearly advised by the Court at the change of plea hearing that he was facing a minimum mandatory ten year term of imprisonment up to a statutory maximum term of life imprisonment. The following exchange took place:

> THE COURT: ALL RIGHT. MR. TAYLOR, WILL THE GOVERNMENT PLEASE ADVISE THE DEFENDANT AS TO THE MAXIMUM POSSIBLE PENALTY PROVIDED BY THE LAW FOR THIS OFFENSE.
>
> MR. TAYLOR: YES, YOUR HONOR.
>
> FIRST OFF THERE WOULD BE A MINIMUM MANDATORY 10 YEARS, BUT NOT MORE THAN LIFE, A FINE OF $4 MILLION, A TERM OF SUPERVISED RELEASE OF AT LEAST 5 YEARS TO LIFE AND A MANDATORY ASSESSMENT OF $100.
>
> THE COURT: ALL RIGHT. THANK YOU, MR. TAYLOR.
>
> Q. FIRST OF ALL, MR. HORTON, DO YOU UNDERSTAND THAT THAT IS THE MAXIMUM SENTENCE THE COURT CAN IMPOSE IN THIS CASE?
>
> A. YES, SIR.
>
> Q. AND DO YOU ALSO UNDERSTAND THAT BY STATUTE THIS COURT MUST IMPOSE AT LEAST A MANDATORY TERM OF IMPRISONMENT OF 10 YEARS AND A MANDATORY TERM OF SUPERVISED RELEASE OF AT LEAST 5 YEARS AS REQUIRED BY THE STATUTE?
>
> A. YES, SIR.
>
> Q. DO YOU UNDERSTAND THAT ABSENT A MOTION FOR DOWNWARD DEPARTURE FILED BY THE GOVERNMENT OR

11

>     SOME OTHER VERY EXTRAORDINARY CIRCUMSTANCE
>     THIS COURT WILL BE REQUIRED TO IMPOSE AT LEAST THE
>     MANDATORY MINIMUM SENTENCE OF 10 YEARS?
>
>     A.  YES, SIR.
>
>     Q.  DO YOU FURTHER UNDERSTAND THAT IN THE
>     FEDERAL SYSTEM A 10 YEAR SENTENCE MEANS JUST
>     WHAT IT SAYS?
>
>     A.  YES, SIR.
>
>     Q.  A 10 YEAR SENTENCE, THAT THERE IS NO PAROLE IN
>     THE FEDERAL SYSTEM?
>
>     A.  YES, SIR.

[*Id*. at 11-12]. The matter is made even clearer by the following exchange:

>     Q. . . . DO YOU UNDERSTAND THAT THIS COURT IN FACT
>     HAS THE AUTHORITY TO IMPOSE A TERM OF LIFE
>     IMPRISONMENT?
>
>     A.  YES, SIR.
>
>     Q.  UNDERSTANDING THAT THE COURT COULD IMPOSE
>     THOSE SENTENCES [sic], DO YOU STILL WANT TO PLEAD
>     GUILTY?
>
>     A.  YES, SIR.

[*Id*. at 17]. Maybe most importantly of all, the Court directly asked counsel for the defendant whether he had "made any representations to the defendant as to what sentence the [Court] might impose in his case other than to give him an estimate of his advisory guideline sentencing range and to discuss with him the applicability of the ten year mandatory minimum sentence required by statute?" [*Id*. at 17-18]. Counsel answered "no, I have not." [*Id*. at 18]. Horton was then asked by the Court if he understood that any estimate by his attorney as to his advisory guideline sentencing range was simply an estimate and not binding on the Court. Horton answered unequivocally: "Yes,

Sir." [*Id.*]. Horton is now bound by his under oath statements.

## B. Use of "Unsubstantiated Charge" to Improperly Enhance Sentence

Petitioner's claim here is baffling to the Court. Horton argues that a conviction for "Assault on an Officer with a Firearm" was improperly used by the Court to enhance his sentence and that counsel's lack of objection was ineffective assistance of counsel. Horton does not further identify the conviction at issue by reference to the date or court of conviction, the circumstances of the conviction, or a reference to the transcript of the sentencing hearing or the PSR. The Court has reviewed the PSR prepared in Horton's case thoroughly. The PSR makes no reference whatsoever to such a conviction. While Horton's history of adult criminal convictions is extensive, requiring 15 paragraphs of the PSR, it simply does not include a conviction for assault of an officer with a firearm. The petitioner's criminal history does include three convictions for assault and two convictions for aggravated assault but the PSR does not list a law enforcement officer as the victim of any of those assaults. Furthermore, a review by the Court of the transcript of the sentencing proceedings in the Court reveals that such a conviction was never mentioned during the course of that hearing. [*See* generally Doc. 141]. The Court generally referred to Horton's criminal history as "the most bothersome part" of the case and made reference to the fact that petitioner had acquired 18 criminal history points in approximately a five year period, sustaining 15 convictions since 2002. [*Id.* at 16].

Horton's claims in this regard are simply not supported by the record and the issue raised by him lacks merit.

## C. Failure of Counsel to Review PSR With Defendant Before Sentencing

Once again, petitioner provides absolutely no factual support for his claim simply referring

13

to "(See: Trans)". To the extent Horton claims that counsel had not reviewed the PSR with him, that claim is flatly contradicted by the record. During the sentencing hearing, Horton was specifically asked "Have you received and reviewed with your attorney a copy of this presentence report?" His answer was an unequivocal "Yes, sir." [Doc. 141 at 10]. This issue lacks any arguable merit.

### D. Facially Defective Indictment That Was Never Presented to a Grand Jury

Once again, Horton does not develop the issue and it is impossible for the Court to discern the nature of his claim. The indictment appears as Document 3 in the Court CM/ECF record. Although the copy contained in the Court's electronic file has had the foreperson's signature redacted, the original indictment was returned to the Court and was appropriately signed by the foreperson. No facial defect in the indictment is apparent to the Court. In any event, when an indictment is not challenged before conviction and appeal, the indictment must be construed liberally in favor of its sufficiency. *See United States v. Gibson*, 513 F.2d 978, 979 (6th Cir. 1975). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime. *United States v. Hart*, 640 F.2d 856, 857 (6th Cir. 1981). Petitioner in this case has not even alleged any prejudice. This issue lacks arguable merit as well.

### E. Counsel's Failure to File a Motion "To Squash The Indictment For Conspiracy Where No Other Conspirator Existed"

Once again, Horton's argument here is almost impossible to discern. The indictment returned in this case charged four alleged co-conspirators, Dennis Bolden, Randall Hester, Alfred Crum and Tim Campbell, and one co-conspirator not charged in the indictment, Nathaniel Allen. "It is not necessary, to sustain a conviction for conspiracy, that all co-conspirators be charged." *United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986). It is also well settled that "a valid indictment may

14

charge a defendant with conspiring with persons whose names are unknown." *e.g. United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983), *cert. denied*, 466 U.S. 970 (1984). The indictment in this case sufficiently alleged both a conspiracy to distribute and possess with the intent to distribute cocaine base and cocaine HCL.

Furthermore, Horton admitted, as part of his plea agreement, that he "conspire[d] with at least one other person to distribute" cocaine base. He further admitted that he "assisted unindicted co-conspirator Nathaniel Allen in the distribution of cocaine base and cocaine powder to other members of the conspiracy." Those admissions are sufficient to establish that a conspiracy existed.

As with the other claims, without more specific factual development of the claims by petitioner, the Court cannot further address the claims and they are insufficient on their face. To the extent the Court has properly discerned the nature of Horton's claim in this regard, the claim lacks merit.

**V.     Conclusion**

For the reasons set forth above, the Court holds petitioner's convictions and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a
15

reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
